## A92A0120. SPARKS v. ELLIS.
### (421 SE2d 758)

ANDREWS, Judge.

The dispute in this case arose out of the dissolution of Gwinnett Oral Surgery Associates ("GOSA"), a professional corporation owned by Sparks and Ellis. The case was tried to a jury, which returned a verdict against Sparks in his individual capacity, and in favor of the other defendants, GOSA and Sparks, P. C. Sparks appeals from the denial of his motion for new trial, or in the alternative for a judgment notwithstanding the verdict.

Viewing the evidence in the light most favorable to the verdict, Ellis purchased half of the stock in GOSA in July 1982. Sparks and Ellis executed five documents in connection with their co-ownership of GOSA. One of those documents was a "Buy Sell Agreement," signed by both Ellis and Sparks, which provided: "[u]pon the death or termination of employment of a shareholder, such shareholder or his legal representative, as the case may be, shall sell, and the Corporation shall buy, all, but not less than all of the Stock owned by such shareholder for a purchase price equal to the Current Value, or as modified in Section 4.4.4 below." Section 4.4.4 provided that if the value of the stock could not be agreed upon, then three appraisers would be appointed to determine the value of the stock.

In August 1987, Ellis notified Sparks of his resignation from GOSA, effective November 1987. A dispute concerning the value of Ellis' stock arose and in March 1988, an appraisal board was selected to resolve the dispute and determine the stock price.

Ellis sought to include good will as part of the valuation of the stock. In response to this, Sparks and GOSA contended that Ellis had created "negative good will." Accordingly, the attorney who represented Sparks, Sparks, P. C. and GOSA at trial sent a letter to the appraisers which stated that GOSA had determined that Ellis' presence in the corporation created a negative good will. In the letter, dated April 7, 1989, the attorney, who represented himself at that time as counsel for GOSA, stated:

"To support this contention, GOSA would cite the following items:

"a. As a result of Dr. Ellis' falsification of a physical examination report, GOSA lost all patient referrals from Dr. James Jordan.

"b. There was an incident involving Dr. Ellis and a young female

patient which revolved around indiscretions taken by Dr. Ellis with the patient."

The appraisers returned their opinion on August 20, 1989, valuing Ellis' stock at $119,000; a sum which GOSA refused to pay to Ellis.

A separate, related dispute between the parties arose over the equipment which Ellis had purchased for the corporation. As equal shareholders in the corporation, both Ellis and Sparks were obligated to purchase equipment for the three offices which GOSA leased, which obligation each doctor fulfilled by individually purchasing certain equipment and leasing it to GOSA. Ellis had obtained financing for the equipment from two different banks. At some point after Ellis' resignation, GOSA discontinued lease payments to him.

The procedural history of this case is somewhat convoluted. On May 25, 1988, Ellis filed suit against GOSA seeking return of the equipment. Sparks answered the lawsuit, denied liability and counterclaimed. In the meantime, because Ellis had discontinued payments to the banks on his notes for the equipment, the banks sued Ellis in two separate suits. Ellis added GOSA as a third-party defendant to both cases. Summary judgment was granted to the banks against Ellis. Thereafter Ellis' three lawsuits were consolidated into one. After the suits were consolidated, Ellis amended his complaint to include claims for breach of contract, conversion, libel, attorney fees, costs and punitive damages and added Sparks and Sparks, P. C. as defendants.

The case was tried to a jury which found Sparks liable for breach of contract in the amount of $119,000, which was the value the appraisers set for Ellis' stock in GOSA as of the date of his resignation. Further, the jury found Sparks liable for conversion in the amount of $70,000; libel in the amount of $25,000; attorney fees and costs in the amount of $45,000; and punitive damages in the amount of $25,000.

1. In his first two enumerations of error, Sparks contends that the trial court erred in two respects by failing to grant a new trial regarding Ellis' breach of contract claim. He first argues that a new trial was warranted because the contractual obligation alleged to have been breached was the obligation of GOSA and not that of him individually. Secondly, he claims that the trial court erred in failing to grant a new trial on the contract claim, because Ellis failed to allege in his pleadings that Sparks breached any contractual obligations arising out of the buy-sell agreement, making the verdict for contractual damages against Sparks individually void as a matter of law.

In Sparks' first argument, he contends that while he was individually a signatory to the buy-sell agreement, there was no contract language making any of the parties jointly and severally liable for the obligations of any other party. Therefore, Sparks claims, under the

contract there was no basis for his individual liability based on the provisions of the buy-sell agreement which provided that the corporation would buy out the resigning stockholders' stock.

Ellis' claims against Sparks appeared to be based on the contention, to which Sparks conceded, that after Ellis resigned from GOSA, Sparks transferred all of GOSA's assets to the account of Sparks, P. C. Ellis argues that these actions breached the agreement which had been executed at the outset of his involvement with the corporation and made GOSA unable to fulfill its obligations.

Although Sparks denied liability to Ellis, at trial he stated: "there has never been a denial that I transferred assets and liabilities to [GOSA's] successor or a divisitive reorganization corporation." Sparks admitted that part of the purpose of this transfer was to divert money from claims arising out of disputes with Ellis. There was also evidence that Sparks continued to represent himself as president of GOSA after the corporation dissolved.

Pretermitting the question of whether the contract specifically provided for joint and several liability, we find no error in the trial court's denial of Sparks' motions since the breach of contract claim against him was valid for several reasons. Sparks admitted transferring GOSA's assets to another corporation and conceded that part of the purpose of this transfer was to divert money from claims arising out of disputes with Ellis and conceded that after the corporation dissolved he continued to represent himself as president of GOSA.

"Since the evidence was in conflict as to whether [Sparks] signed the contract in an individual or representative capacity, a verdict absolving him from individual liability was not demanded, and the trial court properly denied his motion." *O'Brien's Irish Pub v. Gerlew Holdings*, 175 Ga. App. 162, 164 (332 SE2d 920) (1985). Further, there was evidence of abuse of the corporate form and "[t]he corporate veil may be pierced where it appears that ' "the stockholders disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such a unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud." ' *Farmers Warehouse v. Collins*, 220 Ga. 141, 150 (137 SE2d 619) (1964)." *Menchio v. Rymer*, 179 Ga. App. 852 (1) (348 SE2d 76) (1986); see also *Kelley v. Austell Bldg. Supply*, 164 Ga. App. 322 (3) (297 SE2d 292) (1982); compare *Caton v. Haynes*, 260 Ga. 204 (391 SE2d 107) (1990). "Further if the individual who is the principal shareholder or owner of the corporation conducts his private and corporate business on an interchangeable or joint basis as if they were one, then he is without standing to complain when an injured party does the same." (Punctuation omitted.) *Smith v. Hawks*, 182 Ga. App. 379 (4) (355 SE2d 669)

(1987). Given the instant facts we find Sparks' first enumeration of error without merit.

In his second argument, Sparks claims that Ellis never alleged a breach of the buy-sell agreement and that the verdict covered issues never raised by the pleadings. After a review of the amended complaint and the pretrial order, which both specifically reference a breach of this agreement, we find this enumeration without merit.

2. In his third enumeration, Sparks claims that the trial court erred in failing to grant his motion for directed verdict and for a judgment notwithstanding the verdict on the issue of libel. The libel claim was premised on the April 7, 1989 letter, which was written to the appraisers by the attorney who represented the defendants at trial. Sparks admitted at trial that he provided the information for the letter to the attorney. Sparks argues that the allegedly libelous statements were both true and privileged, and were made by and on behalf of parties other than Sparks and that his motions were improperly denied.

While there was evidence that both statements were true, there was also evidence in the record that the statements were false. Thus, there was no error on this basis in the trial court's decision to deny Sparks' motions since a jury question remained on this issue. *Stone v. McMichen*, 186 Ga. App. 510 (2) (367 SE2d 839) (1988); see also OCGA § 51-5-6.

In order to analyze the remainder of Sparks' arguments regarding this enumeration, it is necessary to put the letter in its procedural context. At the time of the letter, April 7, 1989, the sole defendant in the suit was GOSA, yet Sparks admitted at trial that GOSA was dissolved as a corporation in 1988. He concedes that he was president of the corporation and the only person representing GOSA at the time the letter was written. Sparks was added as a defendant to the suit in March 1990.

Sparks claims that the statements were privileged under OCGA §§ 51-5-7 (6) and 51-5-8. He claims that because the statements were made by an attorney to a "quasi judicial forum," the group of appraisers who were to appraise the stock, the statements were privileged.

The privilege found in OCGA § 51-5-8 provides: "All charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged. However false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous." Although the letter was written after suit was initiated against GOSA, we do not find that it fell within the material protected under this section and thus this privilege did not apply. See generally *Bell v. Anderson*, 194

Ga. App. 27 (389 SE2d 762) (1989).

Sparks argues that the privilege under OCGA § 51-5-7 (6) protected the statements. That section provides that "[c]omments of counsel, fairly made, on the circumstances of a case in which he is involved and on the conduct of the parties in connection therewith," are privileged communications. Pretermitting questions regarding the application of that conditional privilege given the facts of this case, see *Sherwood v. Boshears*, 157 Ga. App. 542, 543 (278 SE2d 124) (1981), we find that it does not apply. We find nothing in the language of the privilege under OCGA § 51-5-7 to indicate that it extends further than to "comments of counsel." See *Atlanta News Pub. Co. v. Medlock*, 123 Ga. 714 (51 SE 756) (1905); see also *Bishop v. Intl. Paper Co.*, 173 Ga. App. 34 (2) (325 SE2d 870) (1984). Thus, this privilege is not applicable to Ellis' claim against Sparks. See generally *Quikrete Cos. v. Schelble*, 186 Ga. App. 330 (367 SE2d 114) (1988).

3. Sparks argues that the trial court erred in failing to grant his motion for a directed verdict and for judgment notwithstanding the verdict on the issue of conversion. This argument is without merit. Again, our standard of review here is whether there is *any* evidence to support the verdict. *Antique Center of Roswell v. City of Roswell*, 196 Ga. App. 894 (3) (397 SE2d 146) (1990).

Ellis' claim of conversion appears to have been based in large part on equipment which Sparks retained and used after he resigned. Sparks claims that the record is "absolutely silent with regard to any distinct act of dominion over the property in question that is hostile to or inconsistent with Dr. Ellis' ownership of the property or his right to its possession." We disagree and find that the record contains sufficient evidence regarding Ellis' allegation of conversion to uphold the verdict. *Spooner v. Lossiah*, 185 Ga. App. 876 (366 SE2d 236) (1988); see generally OCGA § 51-10-2.

4. Sparks contends that the trial court erred in failing to grant his motion for new trial because the transcript showed that the jury was confused, that it acted with prejudice, and that it considered the inappropriate question of collectability and returned a verdict against Sparks that was insupportable The record reflects that the jury had questions regarding the verdict form. The jury inquired about the form and the court explained that collectability was not to be a consideration. The verdict form set forth each issue to be decided by the jury in a separate section and is sufficiently clear. Furthermore, after returning their verdict, the court polled the jury and each juror validated the verdict.

OCGA § 9-12-4 provides that "[v]erdicts shall have a reasonable intendment and shall receive a reasonable construction. They shall not be avoided unless from necessity." We find no such necessity here and this enumeration is without merit.

5. Finally, Sparks claims that the trial court erred in failing to grant his motion for a new trial on the issue of attorney fees and on the issue of punitive damages. First, Sparks argues that because it is necessary to set aside the underlying claims, punitive damages were improperly awarded. Secondly, appellant argues that there was not clear and convincing evidence under § 51-12-5.1 (b) regarding the punitive damages.

Sparks argues that attorney fees were not warranted under OCGA § 13-6-11 because the fact that two of the three defendants were found not liable shows that his position was reasonable. This argument is without merit.

Sparks' second argument that punitive damages were not warranted is also without merit. The record reflects that the trial court followed the procedure outlined in OCGA § 51-12-5.1 (b) and that there was clear and convincing evidence to support the jury's conclusion that Sparks' actions "showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED JULY 13, 1992 —
RECONSIDERATION DENIED JULY 31, 1992 — 

*Sutherland, Asbill & Brennan, William D. Barwick, Lisa C. Foster, Charles T. Lester, Jr.*, for appellant.
*Webb, Tanner & Powell, Anthony O. L. Powell, Ralph L. Taylor III*, for appellee.