**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

June 24, 2025

# In the Court of Appeals of Georgia

A25A0550. PEABODY ENERGY CORPORATION v. STRATA
PRODUCTS WORLDWIDE, LLC et al.

BROWN, Judge.

Peabody Energy Corporation ("Peabody Energy") appeals from the trial court's denial of its motion to strike a libel claim asserted against it by Strata Products Worldwide, LLC, Strata Products (USA), LLC, Strata Mine Services, LLC, Collin Tennant, and Andrew Nunnery (collectively "Strata Products"). In its sole enumeration of error, Peabody Energy asserts that the trial court erred in denying its anti-SLAPP motion brought pursuant to OCGA § 9-11-11.1 because its statements should be considered as true. For the reasons explained below, we affirm.

1. *Georgia's Anti-SLAPP Statute*. "Strategic lawsuits against public participation, or 'SLAPPs,' are meritless lawsuits brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up their target's resources and driving up the costs of litigation." (Footnote omitted.) *Wilkes & McHugh, P.A. v. LTC Consulting*, 306 Ga. 252, 257 (2) (830 SE2d 119) (2019). Our General Assembly enacted an anti-SLAPP provision in 1996, OCGA § 9-11-11.1, which it later revised in 2016 "to substantially track California's anti-SLAPP procedure as set out in California Code of Civil Procedure § 425.16." Id. "[T]he 2016 amendment fundamentally altered the mechanics of the anti-SLAPP procedure. Thus, our precedents construing the pre-amendment version of OCGA § 9-11-11.1 are of limited utility in interpreting the revised anti-SLAPP statute." Id. at 258 (2).

Under the current procedure,

[a] claim for relief against a person or entity arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern shall be subject to a motion to strike unless the court determines that the

2

nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim.

OCGA § 9-11-11.1 (b) (1). A court making the determination provided for in paragraph (b) (1) of the anti-SLAPP statute "shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based[.]" OCGA § 9-11-11.1 (b) (2). "We generally review a trial court's ruling on an anti-SLAPP motion to strike de novo, viewing the pleadings and affidavits submitted by the parties in the light most favorable to the plaintiff (as the non-moving party)." (Citation and punctuation omitted.) *PNC Financial Svcs. Group v. Gibson*, 371 Ga. App. 660, 661 (1) (901 SE2d 331) (2024). With this framework in mind, we now turn to the underlying event at issue.

2. *Fire at Shoal Creek Mine*. Peabody Energy owns the Shoal Creek Mine, a large underground coal mine in Alabama. Strata Products, collectively, sell or install a product called "Strata Advanced Foam Solution." It "is a single-component polyurethane resin that has multiple applications in the mining context[,]" such as providing an impermeable "barrier to seal against or divert water." "When injected into rock and strata layers, it also generates compressive strength and strong adhesion

to rock fragments, solidifying the strata and fortifying the underground structure. . . . [It is] well[ ]suited for large voids and cavities within mines." It "is mixed with a catalyst, such as Strata's 'Extra Fast[.]' Collectively, they are referred to as 'Strata Foam.'" An expert retained by Strata Products "investigated the possibility that [its] Extra Fast foam could self-ignite due to heating during pumping" and "changes in the chemical, thermal, and mechanical properties of the foam arising from the addition of . . . fuels and solvents to [it]." (Punctuation omitted.) The expert concluded after two rounds of testing that Strata Products' Extra Fast foam "does not reach temperatures sufficient to allow self-ignition[,]" that it "reaches its maximum temperature . . . less than 30 minutes after the beginning of foam pumping, after which the temperature begins to drop until reaching ambient temperatures," and that "there is no basis for concluding that [it] is capable of self-ignition." "The temperature at which [it] combusts, as determined by thermogravimetry, is approximately 500 [degrees] F, whereas the maximum observed temperature during cure was 261 [degrees] F, a difference of 239 [degrees] F."

In February and March 2023, Strata Products employees pumped Strata Foam at the Shoal Creek mine "without incident of any fire or other unusual

circumstances." On March 28, defendant Tennant and another Strata Products employee pumped Strata Foam into roof voids at the Shoal Creek Mine the entire day until Shoal Creek Mine managers asked them to stop "because they had other work to do." They left at 8:00 p.m., and at the time of their departure, there was no smoke or fire.

Around 3:30 a.m. on March 29, smoke was observed in the area where the Strata Foam had been installed the day before. At some point that morning, a fire broke out in the same area that was extinguished by 12:00 p.m. The general mine foreman at the Shoal Creek Mine averred in an affidavit that he saw a portion of void fill material on fire that had fallen out and that when he looked up, he could see that void fill material was on fire. According to Tennant, a mine supervisor told him while he was on-site during the incident that he believed the mine was experiencing spontaneous combustion and that a different mine worker stated that the shearer on a machine had been cutting rocks before the smoke and fire broke out. Tennant explained that cutting rock "creates a tremendous amount of friction and sparks that resemble a fireworks show." Additionally, after Tennant left at 8:00 p.m., mine personnel pulled "chain" and lowered shields, activities that "have the potential to

cause friction and sparks which can ignite gas in an underground coal mine and/or cause combustion of residual carbonaceous material." Strata Products alleged in its complaint that Shoal Creek Mine suffered an explosion and fire in 2006 attributed to the ignition of a flammable methane/air mixture during a roof fall.

On March 29, 2023, Peabody Energy issued a press release titled "Peabody Confirms Incident at Shoal Creek Mine" and stating: "Peabody (NYSE: BTU) today confirmed a fire that began earlier today at Shoal Creek Mine *involving void fill material* utilized to stabilize the roof structure of the mine. . . . The incident remains subject to further investigation." (Emphasis supplied.) The same day, it published the press release on its website and also filed a Form 8-K with the Securities and Exchange Commission ("SEC"), attaching a copy of its press release. Peabody Energy repeated its statement about the fire "involving void fill material" in Form 8-Ks filed with the SEC on April 27, 2023 and June 20, 2023, a form 10-Q filed with the SEC on May 4, 2023, and another press release posted on its website on June 20, 2023.

3. *Procedural History.* In July 2023, Strata Products filed a complaint against Peabody Energy and its wholly-owned subsidiary Peabody Southeast Mining, LLC ("Peabody Mining"), which it amended 11 days later. Strata Products' claims against

6

Peabody Energy include: breach of contract, libel, libel per se, and declaratory judgment. Strata Products sought breach of contract damages in the amount of $1,234,991.66 plus prejudgment interest, $8 million in tort damages, punitive damages in an amount to be determined at trial, and attorney fees and expenses under OCGA § 13-6-11. Peabody Energy and Peabody Mining answered the complaint, denied liability, and asserted a counterclaim for "Alabama's Extended Manufacturer's Liability Doctrine," breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, "negligent/wanton design/manufacture/sale," negligent application of the fill material, fraudulent misrepresentation and suppression concerning the flammability of the fill material, and negligent misrepresentation.

On the same day they filed their answer and counterclaim, Peabody Energy and Peabody Mining filed a motion to strike Strata Products' defamation[1] and libel claims pursuant to the Anti-SLAPP statute. They asserted various grounds in support of their motion and attached affidavits from the general mine foreman and the general

---

[1] Strata Products' defamation claims were asserted against only Peabody Mining.

manager of the Shoal Creek Mine. Strata Products opposed the motion and submitted affidavits from employees and an expert.

After the parties consented to the transfer of this case to the Fulton County Metro Atlanta Business Case Division, that court denied Peabody Energy's motion to strike the libel claim[2] based, in part, on its conclusion that

> the phrase "involving void fill material" is, at a minimum, ambiguous as to the role the void fill material played in the fire. A plain reading of this statement could lead a reader to conclude that the void material caused the fire. Peabody Energy did not list anything else that the fire "involved," and one obvious implication is that the void fill material caused the fire.

Relying upon this Court's decision in *Fiske v. Stockton*, 171 Ga. App. 601, 602 (2) (320 SE2d 590) (1984), overruled on other grounds, *Oskouei v. Matthews*, 321 Ga. 1, 26 (4), n.26 (912 SE2d 651) (2025), the trial court reasoned that

> if a statement 'is capable of two meanings, one of which would be libelous . . . and the other not, it is for the jury to say, under all the circumstances surrounding its publication, . . . which of the two

---

[2] The trial court granted Peabody Mining's Anti-SLAPP motion and dismissed without prejudice Strata Products' defamation claim against Peabody Mining. Peabody Mining has not participated in this appeal.

meanings would be attributed to it by those to whom it is addressed or by whom it may be read.' *Fiske*, 171 Ga. App. at 602 [(2)].

4. *Georgia Defamation Law*. In its sole claim of error on appeal, Peabody Energy contends that because its statements can be construed as true, Strata Products has no probability of success on its libel claim.

Libel is a "type of defamation" claim that is statutorily defined as the "false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule. OCGA § 51-5-1 (a)." *ACLU v. Zeh*, 312 Ga. 647, 650 (1) (b), n. 4 (864 SE2d 422) (2021). Defamation claims in Georgia have four elements: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged[3] communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." (Citation and punctuation omitted.) *Oskouei*, 321 Ga. at 5 (1) (b). In general, a defamatory statement is one that injures the reputation of a person. See *Spence v. Johnson*, 142 Ga. 267, 270 (2) (82 SE 646) (1914). In the context of libel, it

---

[3] OCGA § 51-5-7 recognizes nine categories of privileged communications.

is one "tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." OCGA § 51-5-1 (a).

"[T]ruth is a perfect defense to a defamation action" as "falsity is an essential element of both libel and slander." (Citation and punctuation omitted.) *Lucas v. Cranshaw*, 289 Ga. App. 510, 512 (1) (659 SE2d 612) (2008). See also OCGA § 51-5-6 ("The truth of the charge made may always be proved in justification of an alleged libel or slander."). Where evidence is conflicting, the issue of truthfulness is a question of fact for the jury. See *Sparks v. Ellis*, 205 Ga. App. 263, 266 (2) (421 SE2d 758) (1992) (if there is evidence in the record that the statements at issue are true and also evidence in the record that the statements are false, the issue is one for the jury). See also *Hub Motor Co. v. Zurawaski*, 157 Ga. App. 850, 852 (3) (276 SE2d 689) (1981). "It is only where the meaning of a publication is so unambiguous as to bear only one reasonable interpretation that a court may decide the question as a matter of law." *Equity Prime Mtg. v. Greene for Congress*, 373 Ga. App. 441, 445, 446 (2) (A) (908 SE2d 717) (2024) (finding that some "statements may be reasonably understood to imply defamatory facts about [the plaintiff] that could be proven false" in anti-SLAPP case).

Additionally, "a defamation action will lie only for a statement of fact. This is because a statement that reflects an opinion or subjective assessment, as to which reasonable minds could differ, cannot be proved false." (Citation and punctuation omitted.) *Cottrell v. Smith*, 299 Ga. 517, 523 (II) (A) (788 SE2d 772) (2016). Nonetheless,

> there is no wholesale defamation exception for anything that might be labeled opinion. An opinion can constitute actionable defamation if the opinion can reasonably be interpreted, according to the context of the entire writing in which the opinion appears, to state *or imply* defamatory facts about the plaintiff that are capable of being proved false.

(Citation and punctuation omitted; emphasis supplied.) Id.

Here, we are asked to address whether a libel claim can survive an anti-SLAPP motion to strike where the statements at issue are ambiguous and can reasonably be understood as meaning the void fill material was on fire (the truth of which has not been disputed), as well as expressing an opinion that the void fill material caused the fire, *and* construction of the pleadings and affidavits in favor of the nonmovant supports a probability that the latter meaning could be shown to be false. As Strata Products met its burden of showing a probability of success with regard to whether the

11

statements at issue could reasonably be interpreted as implying a defamatory fact about the cause of the fire and are capable of being proved false, the trial court did not err by denying Peabody Energy's motion to strike. Cf. *Sparks*, 205 Ga. App. at 266 (2); *Wright v. Southern Bell Tel. & Telegraph Co.*, 169 Ga. App. 454, 458-459 (2) (313 SE2d 150) (1984); *Martin v. Hearst Corp.*, 777 F3d 546, 552 (2nd Cir. 2015) ("even a technically true statement can be so construed as to carry a false and defamatory meaning by implication or innuendo"); *Memphis Pub. Co. v. Nichols*, 569 SW2d 412, 420 (IV) (Tenn. 1978) ("Truth is available as an absolute defense only when the defamatory meaning conveyed by the words is true.").[4]

5. *Substantial Truth*. Peabody Energy also asserts that because its statements should, at a minimum, be considered as substantially true, Strata Products cannot show a probability of success on its libel claim. Strata Products counters this assertion by pointing out that Peabody Energy "attempts to unreasonably narrow the scope of Georgia's defamation law protections by cobbling together an assortment of inapposite

---

[4] Our opinions in *McDonald v. Few*, 270 Ga. App. 671 (607 SE2d 265) (2004), *Cox Enterprises v. Bakin*, 206 Ga. App. 813 (426 SE2d 651) (1992), and *Yandle v. Mitchell Motors*, 199 Ga. App. 211 (404 SE2d 313) (1991), do not require a different result as none involved an ambiguous statement that could reasonably be interpreted as implying a defamatory fact capable of being proved false.

Georgia defamation cases." Addressing these arguments requires an examination of the history and context of the cases upon which they rely.

(a) *No express adoption of doctrine*. It does not appear that the Supreme Court of Georgia or the General Assembly has expressly adopted a "substantial truth" analysis applicable to all Georgia defamation cases. See *Retail Credit Co. v. Russell*, 234 Ga. 765, 775 (III) (218 SE2d 54) (1975). Compare *Maguire v. Journal Sentinel, Inc.*, 605 NW2d 881, 888 (A) (2) (Wis. Ct. App. 1999) (" '[s]ubstantial truth' is a complete defense to a defamation action") (citation omitted). "Nothing is said of 'substantial' truth" in the statute codifying truth as a defense to libel. *Retail Credit*, 234 Ga. at 775 (III). As the Supreme Court of Georgia explained in *Retail Credit,* based upon "unique policy issues[,]" the Georgia Court of Appeals concluded in cases concerning newspaper reports of court proceedings, that "some immaterial inaccuracies and incompleteness in newspaper accounts of judicial proceedings [are] nonetheless a 'true' report of those proceedings." *Retail Credit*, 234 Ga. at 775 (III). See, e. g., *Atlanta Journal Co. v. Doyal*, 82 Ga. App. 321, 330 (3) (60 SE2d 802) (1950) (whether transposition of quotation and the addition of words in newspaper account of testimony in divorce proceeding were an "immaterial inaccuracy or an unauthorized enlargement of the

witness' statements, as well as whether or not the average reader would construe the report to mean that the plaintiff gambled with dice, are questions for the jury"). After so describing our opinions, the Supreme Court concluded that these cases had "little relevance" to the issue before it, which was the trial court's failure to charge the jury on substantial truth. *Retail Credit*, 234 Ga. at 775 (III). It then held that such a charge was not warranted based on the particular facts before it and took care to note that it "express[ed] no opinion on whether a charge of 'substantial' truth is ever justified. . . ." Id.

(b) *Privilege for fair and honest reports.* As outlined by the Supreme Court of Georgia in *Retail Credit*, this Court developed a body of law around privileged communications for "[f]air and honest reports" of "the proceedings of legislative and judicial bodies" or "court proceedings." OCGA § 51-5-7 (5) and (6). In the context of cases involving reports of judicial or legislative proceedings by a media defendant, we have stated:

> Although it must be accurate, as least with regard to all material matters, a substantially accurate report may be privileged, as mere inaccuracies not affecting materially the purport of the article are immaterial. It is not necessary that the report be verbatim, and it may consist of an abridged or condensed statement, provided such statement is a fair one. 53 C. J.

14

S. 205, 206, § 127. A publication is not shorn of its privileged character because it is abridged or condensed. 33 Am. Jur. 150.

(Punctuation omitted.) *Shiver v. Valdosta Press*, 82 Ga. App. 406, 412 (61 SE2d 221) (1950). See also *Lawton v. Ga. Television Co.*, 216 Ga. App. 768, 772 (1) (456 SE2d 274) (1995) (stating "[t]he substantial accuracy required for a fair report means that the fair report must have the same gist as the proceedings reported" in case involving privilege under OCGA § 51-5-7) (citation and punctuation omitted); *Mathews v. Atlanta Newspapers Inc.*, 116 Ga. App. 337, 340 (4) (157 SE2d 300) (1967) ("As long as facts are not misstated, distorted or arranged as to convey a false and defamatory meaning, there is no liability for a somewhat less than complete report of the truth, even if the newspaper happens to recognize an element of humor in the situation reported and conveys this, either impliedly or expressly, as well as some of its own editorial opinions in that regard.").

Here, the privilege for "fair and honest reports" under OCGA § 51-5-7 (5) or (6) has not been invoked by Peabody Energy; the only privileges it asserted below were based upon its alleged good faith. See OCGA § 51-5-7 (3) ("Statements made with a good faith intent on the part of the speaker to protect his or her interest in a matter in

which it is concerned"); OCGA § 51-5-7 (4) ("Statements made in good faith as part of an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern, as defined in subsection (c) of Code Section 9-11-11.1 [the anti-SLAPP statute].") Accordingly, at first glance, it does not appear that this body of law should be applied to Peabody Energy's statements in this case.

Nonetheless, other decisions by this Court have arguably applied this line of reasoning outside the context of the privilege for fair and honest reports of court, legislative, or judicial proceedings and instead, to the analysis of whether a statement by a media defendant was false. For example, in *Lucas*, we stated:

> Because falsity is an essential element of both libel and slander, truth is a perfect defense to a defamation action. Accordingly, where a publication is substantially accurate, and if the article is published by the newspaper in good faith and the same is substantially accurate, the newspaper has a complete defense. As long as the facts are not misstated, distorted or arranged so as to convey a false and defamatory meaning, there is no liability for a somewhat less than complete report of the truth, even if the newspaper conveys its own editorial opinions.

16

(Citations and punctuation omitted.) 289 Ga. App. at 512 (1).

(c) *The First Amendment and substantial truth.* While the Supreme Court of Georgia has never explicitly recognized a doctrine of substantial truth, it has acknowledged that "[i]n certain circumstances, . . . the First Amendment to the United States Constitution places substantial limitations on state defamation law." *ACLU*, 312 Ga. at 648 (1). In *Masson v. New Yorker Magazine*, 501 U. S. 496 (111 SCt 2419, 115 LE2d 447) (1991), an oft-cited case for substantial truth, the Supreme Court of the United States explained the issue before it as follows:

> In this libel case, a public figure claims he was defamed by an author[5] who, with full knowledge of the inaccuracy, used quotation marks to attribute to him comments he had not made. The First Amendment protects authors and journalists who write about public figures by requiring a plaintiff to prove that the defamatory statements were made with what we have called "actual malice,"[6] a term of art denoting deliberate or reckless falsification. We consider in this opinion

---

[5] The author wrote an article published in a weekly magazine. 501 U. S. at 500 (I).

[6] In *ACLU*, the Supreme Court of Georgia noted that the United States Supreme Court's "adoption of the actual malice standard as a matter of federal constitutional law applicable to defamation cases brought under state law was a sharp departure from tradition" and that "two justices on that Court have recently called for reconsideration of this line of precedent." 312 Ga. at 652 (1) (b), n.5.

whether the attributed quotations had the degree of falsity required to prove this state of mind, so that the public figure can defeat a motion for summary judgment and proceed to a trial on the merits of the defamation claim.

501 U. S. at 499. As part of its consideration of what "evidence suffices to show that respondents acted with the requisite knowledge of falsity or reckless disregard as to truth or falsity" (the standard for actual malice, 501 U. S. at 510-511 (II) (A)), the Supreme Court of the United States concluded that it must "consider the concept of falsity; for we cannot discuss the standards for knowledge or reckless disregard without some understanding of the acts required for liability." Id. at 513 (II) (C).

The Supreme Court then described California defamation law[7] as follows before stating that its "definition of actual malice [under the First Amendment] relies upon this historical understanding":

California law permits the defense of substantial truth and would absolve a defendant even if she cannot "justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details." 5 B. Witkin,

---

[7] The case originated as a diversity action asserting a claim for libel under California law. See *Masson v. New Yorker Magazine*, 895 F2d 1535, 1536 (9th Cir. 1989).

18

Summary of California Law § 495 (9th ed. 1988) (citing cases). . . . Minor inaccuracies do not amount to falsity so long as "the substance, the gist, the sting, of the libelous charge be justified." *Heuer v. Kee*, 15 Cal. App. 2d 710, 714, 59 P.2d 1063, 1064 (1936); see also *Alioto v. Cowles Communications, Inc.*, 623 F.2d 616, 619 (CA9 1980); *Maheu v. Hughes Tool Co.*, 569 F.2d 459, 465-466 (CA9 1978).

*Masson*, 501 U. S. at 516-517 (II) (C).

The discussion of substantial truth in *Masson* has never been adopted into Georgia defamation law generally or followed by the Supreme Court of Georgia. This Court, however, has quoted or applied the substantial truth language originating from *Masson* numerous times and these decisions trace back to two decisions: *Stange v. Cox Enterprises*, 211 Ga. App. 731, 735 (440 SE2d 503) (1994) (public official case), and *Brewer v. Roberts*, 211 Ga. App. 343, 347 (2) (a) (439 SE2d 77) (1993) (public figure case).[8] Not all of these decisions, however, are ones in which the First Amendment

---

[8] The progeny of *Stange* and *Brewer,* listed in chronological order, include: *Jaillett v. Ga. Television Co.*, 238 Ga. App. 885, 888 (520 SE2d 721) (1999) (citing *Stange* and *Brewer*); *Swindall v. Cox Enterprises*, 253 Ga. App. 235, 236 (558 SE2d 788) (2002) (citing *Jaillett*); *Austin v. PMG Acquisition*, 278 Ga. App. 539, 541 (629 SE2d 417) (2006) (citing *Jaillett*); *Chong v. Reebaa Constr. Co.*, 284 Ga. App. 830, 835 (4) (a) (645 SE2d 47) (2007) (citing *Jaillett*); *Vito v. Inman*, 286 Ga. App. 646, 648 (1) (649 SE2d 753) (2007) (citing *Jaillett*); *Executive Excellence v. Martin Bros. Investments*, 309 Ga. App. 279, 284 (1) (b) (i) (710 SE2d 169) (2011) (citing *Vito*); *Bryant v. Cox Enterprises*, 311 Ga. App. 230, 234 (III) (715 SE2d 458) (2011) (citing *Austin* and

standard of actual malice was clearly applicable.[9] See, e.g., *Dellinger-Allen v. O'Brien*, 355 Ga. App. 811, 817 (1) (c) (846 SE2d 124) (2020) (contract employee filed ethics complaint against clinical experience supervisor for failing to complete licensure paperwork documenting her hours); *Executive Excellence v. Martin Bros. Investments*, 309 Ga. App. 279, 284 (1) (b) (710 SE2d 169) (2011) (attorney stated at Board of Commissioners meeting that there was active litigation involving properties sought to

---

*Jaillett*); *Dellinger-Allen v. O'Brien*, 355 Ga. App. 811, 817 (1) (c) (846 SE2d 124) (2020) (citing *Vito*); *Weaver v. Millsaps*, 370 Ga. App. 513, 517 (2) (898 SE2d 239) (2024) (citing *Bryant* and *Swindall*).

[9] As the Supreme Court of Georgia explained in *ACLU*,
the United States Supreme Court has extended the . . . actual malice standard beyond 'public officials' to plaintiffs who are 'public figures,' meaning that the plaintiff has assumed a role of 'especial prominence in the affairs of society,' either for all purposes or for the limited purpose of the particular public controversy at issue. The Court has also held that even a private-figure plaintiff is required to prove actual malice in order to recover presumed or punitive damages if the defamatory statement was a matter of public concern.

(Citations omitted.) 312 Ga. at 652 (1) (b), n.5. Here, Strata Products sought to recover damages for libel and libel per se, as well as punitive damages. Its complaint asserts that Peabody Energy's statements were made with a reckless disregard for the truth. The trial court below, however, has not explicitly addressed whether federal constitutional or state law applies to the defamatory statements at issue here. In *Oskouei*, a case decided after the trial court's order was entered in this case, the Supreme Court of Georgia "emphasize[d] that Georgia courts generally should engage in that inquiry as a threshold matter in defamation cases." 321 Ga. at 22 (3) (c), n.19.

20

be rezoned). And none of them address whether the California doctrine of substantial truth outlined in *Masson* should be applied in *all* Georgia cases in light of the plain language of the statute establishing "truth" as a justification for an alleged libel or slander. OCGA § 51-5-6. Additionally, some of the decisions incorporating the *Masson* substantial truth language also incorporate some of the language from the fair report privilege cases we have already outlined above. See, e.g., *Jaillett v. Ga. Television Co.*, 238 Ga. App. 885, 888-889 (520 SE2d 721) (1999).

(d) *Application of substantial truth.* Having outlined the evolution of Georgia Court of Appeals cases discussing substantial truth in defamation cases and how we potentially may have used an overly broad brush in these discussions,[10] we conclude that we need not clarify or resolve any potentially conflicting case law because even if it were proper to apply the principle of substantial truth to the statements now before us, a reversal of the trial court's order denying Peabody Energy's motion to strike is not mandated. Strata Products has met its burden to show a probability of success with regard to whether Peabody Energy's statements can reasonably be

_____

[10] In *Oskouei*, the Supreme Court of Georgia recently overruled Georgia Court of Appeals cases which improperly engrafted federal constitutional law onto Georgia law governing "private malice" in cases not involving the First Amendment. 321 Ga. at 26 (4), n.26.

interpreted as implying a defamatory fact about the cause of the fire and, if so interpreted, that the statements would not qualify as substantially true or a mere "immaterial inaccuracy and incompleteness." We are not persuaded by Peabody Energy's argument, grounded in the doctrine of substantial truth outlined in *Jaillett*, 238 Ga. App. at 888-889, that its statements should not be considered false because they would have had no different effect on the mind of the viewer from that which the pleaded truth would have produced. Peabody Energy's argument presupposes that its statements simply mean that the Strata Foam was burning in the fire.[11] As we have already discussed, Strata Products has met its burden of showing a probability of success with regard to whether Peabody Energy's statements can also be reasonably interpreted as meaning that the Strata foam *caused* the fire and this interpretation of its comments would *not* have the same effect on the mind of the viewer as the pleaded truth.

---

[11] While Peabody Energy asserted in oral argument and in its brief to this Court that the "pleaded truth" would include that "[n]othing other than Strata Foam was observed to be burning in the fire[,]" Strata Products pointed to allegations in the pleadings that the fire "irreparably damaged tens of millions of dollars of equipment" and "destroyed . . . Peabody's equipment."

Having concluded that Strata Products met its requisite burden of showing a probability of success, we affirm the trial court's denial of Peabody Energy's anti-SLAPP motion to strike.

*Judgment affirmed. Barnes, P. J., and Watkins, J., concur.*